UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME KENNEDY,

                Plaintiff

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

_____/

Civil Action No.: 20-10909
Honorable Sean F. Cox
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 14, 16]

Plaintiff Jerome Kennedy appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for supplemental security income (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(C).  The Court **RECOMMENDS** that:

- Kennedy's motion [ECF No. 14] be **DENIED**;

- the Commissioner's motion [ECF No. 16] be **GRANTED**; and

- the Administrative Law Judge's decision be **AFFIRMED**.

## I.    BACKGROUND

### A.    Background and Disability Application

Born October 15, 1987, Kennedy was 25 years old on the date of application, July 9, 2013.  ECF No. 10-8, PageID.307, 320.  He has past relevant work as a barber.  *Id*., PageID.320.  Kennedy claimed disability from multiple sclerosis (MS) and depression.  ECF No. 10-3, PageID.123; ECF No. 10-6, PageID.240.

After the initial denial of the claim, an administrative hearing was held in October 2014 before an administrative law judge (ALJ).  ECF No. 10-2, PageID.71-120.  In an April 2015 decision, the ALJ found Kennedy not disabled.  *Id.*, PageID.57-67.  The Appeals Council denied review, and the administrative decision became final in July 2016.  *Id.*, PageID.42-44.

Kennedy sought judicial review.  United States Magistrate Judge Stephanie Dawkins Davis determined that the ALJ had erred in evaluating Kennedy's combination of impairments, and remanded the matter so that the ALJ could obtain the opinion of a qualified medical advisor.  ECF No. 10-9, PageID.384-390.[1]

---

[1] This opinion is also found at *Kennedy v. Comm'r of Soc. Sec.*, 16-12444, 2017 WL 4324829 (E.D. Mich. Aug. 25, 2017), *adopted*, 2017 WL 4310180 (E.D. Mich. Sept. 28, 2017).

A different ALJ held a hearing in June 2019.  ECF No. 10-8, PageID.328-363.  In her February 2020 decision, the second ALJ found that Kennedy was not disabled.  *Id.*, PageID.304-321.  Kennedy again filed for judicial review.  *Id.*, PageID.301; ECF No. 1.

## B.    The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 920(c).

*Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Kennedy was not disabled. At the first step, she found that Kennedy had not engaged in substantial gainful activity from his application date. ECF No. 10-8, PageID.307. At the second step, she found that Kennedy had the severe impairments of MS and major depressive disorder. *Id*. She found that Kennedy's mild cervical degenerative joint disease, optic atrophy, and polysubstance abuse disorder were not severe impairments. *Id*. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.307-311.

Between the third and fourth steps, the ALJ found that Kennedy had

4

the RFC to perform sedentary work,

> except that [he] cannot climb ladders, ropes, or scaffolding.
> [He] can occasionally climb ramps and stairs.  [He] can
> occasionally stoop, kneel, crouch, crawl, and balance on
> uneven terrain or slippery surfaces.  [He] should avoid
> exposure to vibrations/vibrating tools, unprotected heights,
> moving mechanical parts, and extreme cold.  [He] would require
> at [sic] sit/stand option at-will at the workstation (essentially jobs
> that can be performed either seated or standing) provided that
> exercise of this option does not cause him to be off-task for
> more than 10% of the workday.  [He] requires the ability to use
> a cane for walking to and from the workstation and for
> prolonged ambulation.  [He] is limited to "low stress" work
> (defined as simple, routine, and repetitive tasks in an
> environment free from fast-paced production demands involving
> only simple decision-making and few workplace changes) with
> only occasional contact with co-workers, supervisors and the
> public.

*Id.*, PageID.311.

At step four, the ALJ found that Kennedy had past relevant work as a

barber.  *Id.*, PageID.320.  At the final step, after considering Kennedy's

age, education, work experience, RFC, and the testimony of the VE, the

ALJ concluded that Kennedy could perform jobs that existed in significant

numbers in the national economy, including sorter, bench hand, and

inspector.  *Id.*, PageID.321.

5

## II.    ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is not a high standard; it is "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Kennedy argues that the ALJ erred at step three by finding that his impairments did not meet or equal Listings 11.09 or 12.04, and by not properly evaluating the medical source statements of Sridhar Yaratha, M.D. and Rochelle Jones, LLMSW.  ECF No. 14.  He also contends that the RFC did not fully account for his limitations and was thus not supported by substantial evidence.

The Court recognizes that Kennedy has had a host of extraordinary challenges.  He was diagnosed with MS at a young age and has struggled

6

with depression, periods of homelessness, and periods of isolation from his family.  ECF No. 10-7, PageID.253-256; ECF No. 10-14, PageID.589, 593. As noted, the ALJ recognized that Kennedy's MS and major depressive disorder were severe impairments, meaning that his impairments significantly limited his abilities to do basic work activities.  ECF No. 10-8, PageID.307 (citing § 920(c)).

Even so, the ALJ was tasked with deciding what work, if any, Kennedy could do despite his severe impairments.  *See Coldiron v. Comm'r of Soc. Sec*., 391 F. App'x 435, 443 (6th Cir. 2010); *Poe v. Comm'r of Soc. Sec*., 342 F. App'x 149, 155 (6th Cir.2009).  This Court lacks the authority to independently weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (citations omitted).  Under this deferential standard, the ALJ's decision should be affirmed.

**A.**

"When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Vickers v. Comm'r of Soc. Sec.*, 18-12803, 2020 WL 5071999, at *4 (E.D. Mich. Aug. 26, 2020) (citation and quotation marks omitted). "An ALJ's failure to sufficiently articulate his Step Three findings is error." *Id*. But the ALJ articulation duty at step three is not great. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("The ALJ did not err by not spelling out every consideration that went into the step three determination."). And even when an ALJ's articulation is lacking, any error is harmless if a plaintiff cannot show prejudice from the lack of explanation. *M.G. v. Comm'r of Soc. Sec.,* 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012).

To show that the ALJ committed reversible error, a plaintiff "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith–Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014); *Vickers,* 2020 WL 5071999 at *5-6. When a complaint challenges how the ALJ addressed relevant

8

listings, "the ALJ's decision will not be disturbed if it is supported by substantial evidence." *Vickers,* 2020 WL 5071999 at *5.

**1.**

The ALJ addressed Kennedy's MS under Listing 11.09.  ECF No. 10-8, PageID.307-308.  Listing 11.09 is satisfied by establishing either of these:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; OR
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a) AND in one of the following:
>   1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>   2. Interacting with others (see 11.00G3b(ii)); or
>   3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>   4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.09.  The ALJ found that Kennedy did not meet Listing 11.09A because he did not suffer an extreme limitation in his ability to stand from a seated position or maintain balance while standing or walking.  ECF No. 10-8, PageID.308.   Extreme limitation is defined as the inability to maintain an upright position while standing or walking without help from another person or a walker, two crutches, or two canes.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00D2b.  The record

shows that Kennedy relied on a single cane to maintain balance, so he does not meet Listing 1109A.  ECF No. 10-8, PageID.308, 312, 313; ECF No. 10-15, PageID.712; ECF No. 10-17, PageID.1002.

Kennedy relies on Listing 11.09B, arguing that he had marked limitations in physical functioning and marked limitations in more than one category of mental functioning.  ECF No. 14, PageID.1052-1062.  A claimant has "a marked limitation in [his] physical functioning when [his] neurological disease process causes persistent or intermittent symptoms that affect [his] abilities to independently initiate, sustain, and complete work-related activities, such as standing, balancing, walking . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00G2a.  The ALJ must consider the overall effects of the neurological symptoms on the claimant's ability to perform such physical activities on a consistent and sustained basis.  *Id.*

A claimant need not be totally precluded from performing a function or activity, but he must be seriously limited by his symptoms.  *Id.*  The relevant specific motor abilities include independently standing up from a seated position, balancing while standing or walking, and the ability to see, breathe, and swallow.  Listing 11.00G3a.  The ALJ must also consider whether a claimant has a marked limitation in physical functioning because of a combination of limitations in motor abilities, or because of pain or

10

fatigue caused by the neurological disorder seriously limits the work-related motor functions. *Id.*

The ALJ here found that the evidence did not support a finding of marked limitation in Kennedy's physical functioning. ECF No. 10-8, PageID.308. In support, she cited Kennedy's "longitudinal medical record documenting largely stable physical and neurological examination finding . . . and only mild and sporadic instances of similar symptoms during the nearly 4-year period after his initiation of treatment for MS." *Id.* The ALJ noted that the record included no opinion evidence from Kennedy's treating physicians about the frequency and severity of symptoms or functional limitations from his MS. *Id.* Finally, she relied on the opinion of reviewing medical expert, Janis Eiler, M.D., that, "based on the information provided, [Kennedy's] physical limitations did not meet 11.09A or 11.09B." *Id.*

When assessing whether the ALJ has sufficiently articulated her step three findings, the Court must consider all findings of fact set forth in her decision. *See Bledsoe*, 165 F. App'x at 411. At step four, the ALJ concluded that Kennedy could perform sedentary work. ECF No. 10-8, PageID.315. In reaching this conclusion, she found that Kennedy's subjective reports of extreme pain, motor weakness, paresthesia, and poor coordination "are unsubstantiated in nearly all examinations administered

11

to him in the approximately 3 years between his initial diagnosis and initiation of specialized care for MS." *Id.*  The ALJ also found that Kennedy had only one definitive MS "flare-up," that most of his physical examinations revealed normal gait and largely intact sensorimotor function in all extremities, and that medical records noted his use of a cane but did not otherwise corroborate his testimony that he could not walk more than half of a block. *Id.*, PageID.315.

Substantial evidence in the record supports those conclusions.  For example, in June 2013, his gait was stable, he was "actively moving all 4 extremities with 5/5 strength throughout."  ECF No. 10-7, PageID.247.  The next month, his neurological and musculoskeletal examinations, including his gait and balance, were normal.  ECF No. 10-7, PageID.276.  Kennedy had gait disturbance and joint pain in June 2017, but no joint swelling or muscle weakness.  ECF No. 10-13, PageID.516.  Kennedy's examination in December 2018 revealed normal neurologic and musculoskeletal findings.  ECF No. 10-15, PageID.828.  He had dizziness, numbness, and back and joint pain in March 2019, but no extremity weakness, tremors, decreased mobility, joint instability, joint swelling, or limping.  ECF No. 10-16, PageID.908-909.  His neurological examination was normal, including his gait and balance.  *Id*.  Although Kennedy had "mild right ankle

tenderness," the rest of the musculoskeletal examination was unremarkable, and the examining doctor was not sure that his joint pain was related to MS. *Id.*

To challenge the ALJ's finding that Kennedy did not have marked limitations in physical functioning, he lists several symptoms with no context as to timing or consistency:

> The record indicates that Plaintiff has marked limitations in physical functioning spanning back to 2013: inability to even stand for 10 minutes; balance problems; prescribed a cane; falls which have resulted in injuries; lower extremity muscle spasms and pain; numbness; weakness and tingling on the right side of his body; joint pain of the legs; erectile dysfunction; fatigue; blurred vision; and sleep disturbance.

ECF No. 14, PageID.1057-1058.  Kennedy cites more than a dozen pages in the record to support this summary list of symptoms.  *Id.*, citing ECF No. 10-7, PageID.246, 251, 277, 284, 288, 296; ECF No. 10-13, PageID.513, 517, 524, 528; ECF No. 10-15, PageID.754, 797, 804, 819, 826; ECF No. 10-16, PageID.910, 912.  He also relies on his hearing testimony.  ECF No. 14, PageID.1058, citing ECF No. 10-8, PageID.338-339, 353-354.

Kennedy's summary list of symptoms falls short of his burden to "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing."  *Smith–Johnson*, 579 F. App'x at 432-33.  Rather than point to specific evidence, Kennedy invites the Court

to reweigh the evidence and to independently find that he had marked

limitations in physical functioning.  This the Court cannot do.  *Hatmaker,*

965 F. Supp. 2d at 930.

## 2.

Kennedy was also required to show he met or equaled the mental

component of Listing 11.09B.  *Smith–Johnson*, 579 F. App'x at 432-33.  He

asserts that he met the mental component of that listing as well as the

requirements of Listing 12.04, which addresses depressive disorder.  20

C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04, Listing 12.00E.

To meet the mental component of Listing 11.09B, Kennedy must

have a marked limitation in one of the following: (1) understanding,

remembering, or applying information, (2) interacting with others, (3)

concentrating, persisting, maintaining pace, or (4) adapting or managing

oneself.  Listing 12.04B has the same criteria, but requires that the claimant

have one extreme limitation or two marked limitations.  A moderate

limitation is found when a claimant's functioning is "independently,

appropriately, effectively, and on a sustained basis is fair," and a claimant

has a marked limitation when his functioning "independently, appropriately,

14

effectively, and on a sustained basis is seriously limited." Listing 11.00G; Listing 12.00F.[3]

The ALJ concluded that Kennedy had no more than moderate limitations in any of the four criteria. ECF No. 10-8, PageID.310-311. Kennedy alleges that he had marked limitations in his abilities to interact with others; to concentrate, persist, and maintain pace; and to adapt or manage oneself. ECF No. 14, PageID.1055-1056. In support, he lists events, findings, and subjective complaints that he says can be found on more than a dozen of pages in the record. ECF No. 14, PageID.1055-1056. Kennedy provides this list without context as to timing and consistency. *Id.* In other words, Kennedy again fails to point to specific evidence showing that he can meet or equal the requirements of the listings, and instead invites the Court to reweigh the evidence and independently find that he had marked limitations.

---

[3] To meet or equal Listing 12.04, a claimant must satisfy the requirements of paragraphs A and B, or the A and C. Kennedy alleges that he satisfies paragraphs A and B of Listing 12.04. ECF No. 14, PageID.1054. Paragraph A requires that the claimant have medical documentation of five or more specific symptoms of depression. Listing 12.04A. The ALJ found that Kennedy did not satisfy paragraphs B or C, and did not address paragraph A. ECF No. 10-8, PageID.309. Because substantial evidence supports the ALJ's findings about paragraph B, the Court likewise finds it unnecessary to address Kennedy's argument that he satisfies paragraph A.

And some records Kennedy cites undermine his claims of marked limitations.  In February and March 2018, when he was compliant with his medication, he was not manic or psychotic; he had no hallucinations or delusions; and he had normal sleep and appetite.  ECF No. 10-14, PageID.581-585, 589-592.  Greg Washington M.D., of Central City Integrated Health, wrote, "Good grooming and hygiene, pleasant, calm and cooperative, affect is full range, thoughts are logical and goal directed, no thoughts of violence."  *Id*.  In August 2018, Kennedy returned to Central City Integrated Health saying that he had run out of medication.[4]  *Id*., PageID.551-554.  He wanted to resume medication because he "did better" on it.  *Id.*  Without the medication, he had become depressed and was hearing his deceased father's voice tell him to "come with me."  *Id*.  Even then, Kennedy was not manic or psychotic, he had normal sleep and appetite, and his appearance and behavior were normal.  *Id.*

---

[4] Kennedy said that he had run out of medication because of his lack of stable housing and his difficulty getting to Central City Integrated Health. ECF No. 10-14, PageID.551.  He also relies on records that mostly addressed his socioeconomic status.  *See, e.g.*, ECF No. 10-14, PageID.597-605; ECF No. 10-15, PageID.675-682.  The Court does not doubt that Kennedy had formidable socioeconomic challenges, but he does not show that those challenges weigh into a finding of disability under the governing standards.

In an August 2017 record that Kennedy did not highlight, he told Dr. Washington that he "noticed a big difference in his mood" and was sleeping well when he took his medication.  ECF No. 10-14, PageID.615.  Kennedy felt "good," had "no complaints," and was adequately caring for himself.  *Id*. He denied feeling depressed, hopeless, helpless, or suicidal, and he had "normal interest in activities."  *Id.*  Kennedy was not hallucinating and he had a normal appetite.  *Id*.  Dr. Washington noted, "Good grooming and hygiene, pleasant, calm and cooperative, affect is full range, thoughts are logical and goal directed, no thoughts of violence."  *Id*.

Even when Kennedy was not taking medication in June 2017, Dr. Washington found him fully oriented, his memory was intact, he was alert, his concentration and judgment were good, and his content of thought was unremarkable.  ECF No. 10-14, PageID.658-61.  In August 2017, Rochelle Jones, LLMSW, reported similar findings, and noted that Kennedy was insightful, and that his stream of mental activity, characteristics of speech, and presentation during interview were all unremarkable.  *Id*., PageID.623-639.

Thus, evidence in the record supports the ALJ's findings that Kennedy had no more than moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing

oneself.  ECF No. 10-8, PageID.310.  The ALJ reasoned, in part, that

Kennedy "presented as alert, oriented, friendly, and cooperative and

reported good mood and cessation of hallucinations during periods of

compliance with prescribed psychotropic medications."  *Id.*  She noted that

Kennedy "generally presented to his psychiatric evaluations and medication

reviews as alert, calm, and cooperative with unremarkable thought

processes and fair to good concentration."  *Id.*  And the ALJ found that

Kennedy had shown "adequate capacity to understand and respond

appropriately to numerous questions" during psychiatric and mental status

examinations, and "reported improved mood and energy levels through use

of prescribed psychotropic medications."  *Id.*  This evidence supports the

ALJ's findings that Kennedy had no more than moderate limitations from

his mental impairments when he took medications.  Generally, "'[a] medical

condition that can be controlled by treatment is not disabling.'"  *Smith v.*

*Comm'r of Soc. Sec.*, No. 13-10862, 2013 WL 6094745, at *6 (E.D. Mich.

Nov. 20, 2013) (quoting *Warford v. Bowen*, 875 F.2d 671, 673 (8th

Cir.1989)).

### 3.

To support his argument that he had marked limitations in mental

functioning, Kennedy challenges the ALJ's decisions to give no weight to

the opinion of qualified medical expert Sridhar Yaratha, M.D., and to give little weight to the opinion of Social Worker Rochelle Jones.  ECF No. 14, PageID.1053-1065; ECF No. 16, PageID.1091-1092; ECF No. 10-17, PageID.1022-1026.  The Court finds no reversible error.

At the request of the ALJ, Dr. Yaratha reviewed Kennedy's records and answered interrogatories about whether Kennedy's impairments met or equaled Listings 11.09 and 12.04.  ECF No. 10-17, PageID.1022-1026.  Dr. Yaratha found that Kennedy met the criteria for Listing 12.04.  *Id.* at 1024-1025.  As noted by the ALJ, "Dr. Yaratha did not provide a detailed analysis of the Listings or assess degrees of severity to any of the 'B' criteria, but instead relied on [several] exhibits and page [numbers], without specific explanation to support his opinion."  ECF No. 10-8, PageID.309.  The ALJ concluded that Dr. Yaratha's opinion was "an overly broad conclusion that relies almost exclusively on the claimant's subjective allegations during a time in which he was either non-compliant with prescribed medication or not involved in treatment with a mental health professional."  *Id.*

Kennedy accuses the ALJ of cherry-picking the record and making a "highly questionable" and "very peculiar" decision to give Dr. Yaratha's opinion no weight.  But Kennedy's disagreement with the weight the ALJ gave to a consultant's opinion "is not a basis for overturning the

19

Commissioner's decision." *Sibotean v. Comm'r of Soc. Sec.*, No. 1:11-CV-1313, 2013 WL 588927, at *4 (W.D. Mich. Feb. 13, 2013). The ALJ did not have to give the opinion of a medical consultant any particular weight. 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir.2013). Nor did the ALJ have to explain her reasons for discounting Dr. Yaratha's opinion. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJ's to give reasons for only treating sources"). The "fundamental question" is whether the ALJ's treatment of Dr. Yaratha's opinion a medical consultant's opinion "is supported by substantial evidence." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004).

The Court agrees with the ALJ that Dr. Yaratha's reasoning lacked detail. In particular, he did not specify which categories of functional activities were markedly or extremely limited.[5] ECF No. 10-17, PageID.1023-1025. Thus, the bases and supportability of Dr. Yaratha's

---

[5] Kennedy complains that Dr. Eiler's opinion about his physical impairments was no more detailed, but that is not true. Dr. Eiler specified that Kennedy's "neurologic exams have been largely unremarkable and he has been ambulatory with no more than one cane," and that he had "effective use of all extremities." ECF No. 10-17, PageID.1002. In contrast, when concluding that Kennedy met the criteria for Listing 12.04, Dr. Yaratha referred to none of the criteria or the medical findings. ECF No. 10-17, PageID.1023-1024.

opinion eludes meaningful review. And although substantial evidence might support Dr. Yaratha's opinion, it also supports the opposite conclusion for the reasons already stated. Under the deferential standard that applies in Social Security appeals, the ALJ's decision to give no weight to Dr. Yaratha's opinion should be affirmed. *Cutlip,* 25 F.3d at 286.

The ALJ afforded little weight to Ms. Jones's opinion that Kennedy was unable to meet competitive standards in most categories of mental abilities and aptitudes needed to do skilled, semi-skilled or unskilled work. ECF No. 10-8, PageID.309; ECF No. 10-16, PageID.917-918. The ALJ reasoned that Ms. Jones's opinions "were internally inconsistent with her own case management notes indicating that the claimant demonstrated stable mood and largely unremarkable presentation . . . during periods of medication compliance." ECF No. 10-8, PageID.319. Likewise, she found Ms. Jones's opinions to conflict with psychiatric progress notes from December 2017 through January 2019, which report improved depression "when taking his medication." *Id.*

Under Social Security regulations, social workers are not "acceptable medical sources"; they are "other sources." *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 819 (N.D. Ohio 2009) (citing 20 C.F.R. 404.1513(d)). "An ALJ need not give any special deference to an opinion

21

from source that is not an 'acceptable medical source' or provide 'good reasons' for discounting it." *Duffield v. Comm'r of Soc. Sec.*, No. 5:20-CV-1065, 2021 WL 1022449, at *10 (N.D. Ohio Mar. 17, 2021) (citing 20 C.F.R. § 404.1513(a)(2)).  The opinions of "other sources" cannot establish a disability, but they should be "evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." *Engebrecht v Comm'r of Soc.Sec.*, 572 F. App'x 392, 397-98 (6th Cir. 2014) (citing SSR 06-03P).  The ALJ fulfilled her duty; she evaluated Ms. Jones's opinion when addressing the severity of Kennedy's functional limitations and found it inconsistent with other evidence.  ECF No. 10-8, PageID.318-319.  Even if this Court disagreed with the ALJ's decision to give Mr. Jones's opinion little weight, that disagreement would not be grounds for reversal.  "[A]n ALJ is vested with the discretion to determine the proper weight assigned to these other sources based on the evidence of record." *Davila v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 737, 757 (N.D. Ohio 2014).

**B.**

Kennedy argues that the RFC did not properly account for his use of a cane, the likelihood for consistent absenteeism, and time off-task because of his MS and depression.  ECF No. 14, PageID.1066-1069.  The

ALJ accounted for Kennedy's cane use and noted he would need it for walking to and from the workstation and prolonged ambulation. ECF No. 10-8, PageID.311. She also accommodated Kennedy's use of a cane by limiting him to work that can be performed either seated or standing. *Id.* Kennedy does not meet his burden of showing these accommodations to be insufficient. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

Kennedy also contends that the RFC's off-task limitation cannot accommodate his impairments. Kennedy relies on Ms. Jones's medical source statement to support his claim for greater off-task restrictions. As noted, the ALJ afforded little weight to Ms. Jones's opinion and did not accept those relating to Kennedy's likely absenteeism and time off-task. And the ALJ did not have to defer to a source's opinion about how long Kennedy would be off task. *Yousif v. Berryhill*, No. CV 16-13470, 2017 WL 5493139, at *3 (E.D. Mich. Oct. 12, 2017). Even so, the ALJ assessed Kennedy as being off task up to 10% of a workday. ECF No. 10-8, PageID.311. Reversal is not warranted.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Kennedy's motion, ECF No. 14, be **DENIED**; that the Commissioner's

23

motion, ECF No. 16, be **GRANTED;** and that the ALJ's decision be

**AFFIRMED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 9, 2021

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to

24

Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 9, 2021.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager